■ JAMES M. ROACH et al., Appellants, v JOHN R. SZATKO et al., Respondents. [664 NYS2d 101] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Dutchess County (Jiudice, J.), entered August 28, 1996, which granted the defendants' separate motions for summary judgment dismissing the complaint and cross claims insofar as asserted against them.

Ordered that the order is reversed, with one bill of costs, and the motions are denied.

The plaintiff James M. Roach was injured when he fell while riding on the open tailgate of a vehicle driven by the defendant John R. Szatko. Both Roach and Szatko lived at Hiddenbrook Estates, a residential complex owned by the defendant Hidden-

brook Estates Cooperative Corporation (hereinafter Hiddenbrook). Szatko was a member of Hiddenbrook's maintenance committee, which, as a cost-saving measure, decided to seek volunteers to replace light bulbs in the complex's common areas. Szatko volunteered for the job and solicited other volunteers, including Roach.

On the evening of the accident, Szatko, Roach, and two other individuals had been changing light bulbs in various areas of the complex. Szatko, who was driving himself and the others around the complex, testified at his examination before trial that he had opened the tailgate for Roach and the others to sit on. He explained that sitting on the open tailgate was convenient for the work they were performing. The record indicates that both Szatko and Roach had consumed some alcoholic beverages prior to and while working. As Szatko made a left turn, Roach and an individual named James Manfredi fell onto the roadway.

Roach and his wife subsequently commenced this action against Szatko and Hiddenbrook. The Supreme Court granted the defendants' respective motions for summary judgment on the grounds that Roach's assumption of risk and his failure to use a seat belt barred his recovery. It also held that Szatko was not an agent of Hiddenbrook so as to render it liable on the theory of respondeat superior. We reverse.

Under the circumstances, Roach's assumption of risk, if any, is but a factor to be taken into account in ascertaining the proportionate culpable conduct of the parties (*see,* CPLR 1411; *Barker v Kallash,* 63 NY2d 19, 27-28). Further, whether Roach was intoxicated, and whether such intoxication was a factor in his fall, is a question of fact to be resolved at trial. His alleged intoxication would not absolve the defendants of liability if their negligence was one of the proximate causes of the accident (*see, Humphrey v State of New York,* 60 NY2d 742, 744; *Clark v State of New York,* 124 AD2d 879).

Additionally, a plaintiff's failure to utilize an available seat belt is generally to be considered only on the issue of damages, not on the issue of liability (*see, Spier v Barker,* 35 NY2d 444). To the extent that Roach's decision to sit on the tailgate rather than in the vehicle with a seat belt may be considered the functional equivalent of the nonuse of an available seat belt, that fact could be considered in mitigation of damages (*see, DiMauro v Metropolitan Suburban Bus Auth.,* 105 AD2d 236, 243-244). In the unique circumstance where the failure to wear a seat belt is alleged to be the cause of the accident, we have held that the plaintiff's conduct in failing to wear a seat belt

may be considered on the issue of liability (*see, Curry v Moser,* 89 AD2d 1). But in that case, as here, whether the failure to wear a seat belt "which is alleged to have been a cause of the accident" constituted negligence on the part of Roach contributing to the happening of the accident is a question of fact for the jury to resolve (*Curry v Moser, supra,* at 8). Thus, whether Roach's conduct in sitting on the tailgate is to be considered on the issue of liability or on the issue of damages, dismissal of the complaint on a motion for summary judgment was error.

The court also erred in holding, as a matter of law, that Szatko was not an agent of Hiddenbrook. Szatko testified at his deposition that he was a member of the maintenance committee of Hiddenbrook. Jerry Simmons was the chair of the committee. When Szatko volunteered to change the light bulbs, he expressly told the committee members that he would elicit the help of volunteers. Members of the committee agreed to this procedure. Hiddenbrook purchased the light bulbs and placed them in the pump house. Szatko was given the key to the pump house where he could obtain the light bulbs. Simmons acknowledged at his deposition that replacing the light bulbs was one of Szatko's duties as a member of the maintenance committee. Simmons noted also that there were no written rules or regulations pertaining to the replacement of light bulbs, and that Szatko was not required to seek permission prior to doing so. Where, as here, the circumstances raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to the jury (*Maurillo v Park Slope U-Haul,* 194 AD2d 142, 147). Miller, J. P., Ritter, Altman and Krausman, JJ., concur.